**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

DARON L. CABINE,

              Petitioner,

      v.

BRIAN BELLEQUE,

          Respondent.

Civil No. 06-1856-BR

OPINION AND ORDER

**TONIA L. MORO**
Assistant Federal Public Defender
15 Newtown Street
Medford, OR  97501

      Attorney for Petitioner

**JOHN R. KROGER**
Attorney General
**JACQUELINE SADKER KAMINS**
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

      Attorneys for Respondent

**BROWN, Judge.**

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court DENIES the Third Amended Petition for Writ of Habeas Corpus.

<u>**BACKGROUND**</u>

On August 13, 1999, a Multnomah County grand jury indicted Petitioner on one count of Murder and two counts of Assault in the Second Degree. The charges arose from an August 4, 1999, shooting which resulted in the death of Jermaine Robertson and injuries to Verrell Poston and Charles Hamilton.

Petitioner waived his right to a jury. At trial to the court the prosecutor presented the bulk of the state's evidence through the testimony of Howard Hall. Hall testified that earlier on the day of the shooting, Jermaine Robertson allegedly robbed Luron Richards and Jeron Richards, who are Petitioner's cousins. The Richards brothers discussed the alleged robbery at Corey Howard's house in the presence of Petitioner, Howard Hall, and others.

Later, Hall asked Petitioner for a ride to Hall's aunt's house. Petitioner agreed. Hall and Luron Richards, along with Chris Davis, left in Petitioner's car. Petitioner did not drive Hall directly to his aunt's house. Instead, Petitioner took a circuitous route and drove by a tavern called Joe's Place.

Petitioner drove past the tavern, through the surrounding neighborhood, and then returned to the tavern a second time.

The second time they arrived at the tavern, Hall recognized Jermaine Robertson standing on the corner. Before they arrived at the corner, Petitioner did not give any directions to anyone inside the vehicle. Once the car reached the corner, however, Petitioner asked his passengers to roll down their windows. Petitioner and Jermaine Robertson exchanged words through the open windows. Petitioner then leaned back in his seat, and Chris Davis, who was in the front passenger seat, reached across Petitioner and started shooting. Hall testified he never saw Petitioner with a gun.

On cross-examination, Hall testified that when they drove up to Joe's Place the second time, there was a group of people standing behind Jermaine Robertson. Hall indicated he was afraid that one of the other people might have been reaching for a gun and that he thought someone on the corner might actually start shooting at them before Chris Davis began to shoot.

After the shooting, Petitioner drove the car away from Joe's Place. Hall testified he got out of the car after it had gone about one block, ran to a nearby telephone booth, and called Radio Cab. According to Hall, Cab number 81 or 91, whose driver had an accent, responded. Hall rode in the cab to his grandmother's

house, where he learned that Jermaine Robertson had been killed.
Shortly after the event, Hall spoke with the police.

The prosecutor also called Verrell Poston as a witness.
Poston testified he was at Joe's Place at the time of the shooting.
He came out the front door and saw gunfire coming toward his legs
from a car.  As he ran away, Poston was struck by gunfire on the
arm, back, and buttocks.  Poston testified he saw a blue four-door
car leaving the scene.

The prosecutor then called Charles Hamilton.  Hamilton was
outside the tavern for approximately one-half hour before the
shooting began.  He saw a car pull up to the corner and saw shots
fired.  He could not see who did the shooting, but he knew the
shots came from the passenger side of the car.  Hamilton described
the car as a gold or brownish color.  Hamilton was shot in the
shoulder.

Police officer David Barrios testified next.  Barrios had
stopped Petitioner just days before the shooting, on July 30, 1999.
At that time, Petitioner was driving a gold-colored Mitsubishi.
Petitioner told Barrios the car had been rented to Petitioner's
girlfriend.

At the close of the state's case, Petitioner's attorney moved for a judgment of acquittal. He challenged the sufficiency of the evidence. The trial judge denied the motion without discussion.

Before calling any witnesses, Petitioner's trial attorney notified the court that Luron Richards had important information about the case and that the defense intended to call him as a witness the next day. Trial counsel further indicated that the court should appoint counsel for Luron Richards, who had not been charged with any crime at that point. The trial judge agreed with Petitioner's attorney, and arranged for counsel to represent Luron Richards.

In the interim, Petitioner's attorney called Jeron Richards as a witness. The state had indicted Jeron Richards on charges connected with the shooting prior to Petitioner's request for his testimony. Jeron Richards was represented by counsel who, on behalf of her client, invoked Jeron Richard's Fifth Amendment right not to testify. Petitioner's trial attorney asked the court for "judicial immunity" for Jeron Richards, but the trial judge denied the request.

Petitioner's attorney then called Petitioner's mother to the stand. She testified that Petitioner had a habit of driving the back streets, even though the route may be longer.

5 – OPINION AND ORDER –

Petitioner's attorney also called Clifford Alexander, who was employed as a supervisor for the Radio Cab company, to discredit Hall's testimony.  Alexander testified that no calls were made to his company for a cab coming from the general area of the shooting on the night in question, and that the driver of cab 91 did not have an accent.

Petitioner's attorney re-called Howard Hall as an adverse witness.  While the reasons for doing so are not clear on the record, the trial judge cleared the courtroom of witnesses for Hall's testimony.  Hall reiterated his testimony about leaving Petitioner's car following the shooting and calling a cab.

Luron Richards' court-appointed attorney, Joe Calhoun, appeared.  He told the court his client was not going to testify. No other explanation for Luron Richards' refusal to testify was placed on the record.  The court acknowledged Calhoun's statement, and Luron Richards was not called to the stand.  Petitioner did not testify.

Following closing arguments, the trial judge asked for authority as to whether a person could be found guilty of aiding and abetting a reckless or defensive act.  The prosecutor referenced a jury instruction which states a person is criminally responsible for any acts that were a natural and probable

consequence of what he intended.  Petitioner's attorney disagreed

that the instruction applied, because the crime charged was a

specific intent crime.

The trial was adjourned for five days so the parties could

submit additional authorities.  After reviewing the additional

briefing from the parties, the trial judge stated:

> I conclude from careful reading of those cases that
> the -- an accomplice or an aider or abettor can assist,
> counsel, encourage, participate, however the jury
> instruction reads on aiding and abetting, in an act that
> is a reckless act.

Resp. Exh. 107, p. 334.

The judge went on to find Petitioner guilty of Manslaughter.

He explained his reasoning as follows:

> The defense's position is somewhat hamstrung by the
> inability of the defense to call witnesses, such as Jeron
> and Luron, the twins, in that they asserted their Fifth
> Amendment right.  I'm not sure that Luron, the brother of
> Jeron, had such right to assert.  He was not charged.
>
> There could have been presumably some inquiry of him
> until it got to a point of being incriminating.  Then, of
> course, any inquiry would cease once the Fifth Amendment
> right against self-incrimination was asserted.  In the
> case of Jeron, he has been charged, it would be very
> unlikely for him to testify in this case.
>
> But because Howard Hall's testimony was riddled with
> inconsistencies -- and I agree with you, [defense
> counsel], that it was -- there's several cases of
> inconsistent testimony at different times.  That doesn't
> require this Court to find all of his testimony
> unavailing.  Surely, when there are some inconsistencies

7 - OPINION AND ORDER -

and perhaps motivated by even deceitful testimony, the Court, as any finder of fact, needs to review all testimony of the same person with a measure of distrust.

Likewise, if he were, as you propose, an accomplice in this scenario, then his testimony would be accomplice testimony and not only would it be reviewed with distrust but also would be required to have some corroboration. A person, of course, cannot be convicted on accomplice testimony alone. There are corroborating aspects of Mr. Hall's testimony.

We know from -- well, the Court feels from the testimony that the car was used, the one that [Petitioner] had been stopped in only days before, was used in this episode.

If I were to toss out Hall's testimony in its entirety, then we would not know, no one would know whether, in fact, [Petitioner] and the twins showed up at Howard's home complaining about a robbery by Jermaine Robertson. We wouldn't know that that was a motive for some sort of retaliation, but we do know that [Petitioner] was in a car -- or the inference surely is that he was in a car rented by his girlfriend. He had been stopped a couple of days before.

The car contained, among others, Chris Davis, because we know that Chris Davis has entered a plea of guilty in shooting Mr. Robertson. We know that gunfire came from the car and the car was identified, and testimony was from two witnesses, Mr. Hamilton, who identified the vehicle as the same in State's Exhibits 5, 6, and 7, Charles Otis Hamilton, and he was shot from gunfire from the car.

So the tale told by Mr. Hall has some corroborating independent-of-his-testimony features which suggest that the story that he told here was not entirely fictitious. Likewise, Mr. Poston was shot from the car in the street, although Poston was not able to identify the vehicle with the affirmation that Mr. Hamilton did. Nevertheless, he was shot from a vehicle outside Joe's Place.

8 - OPINION AND ORDER -

So it's not a story made up entirely in Mr. Hall's head. There are aspects of this prosecution that support his story despite the fact that he -- and for what reason I do not know, but continues to claim that he has never been referred to as Little Corn Dog, although Detective Austria testified that he wasn't sure, didn't know for sure that Howard Hall had been referred to as such, but nevertheless he denies that, is at a minimum confused and perhaps manufacturing the stories regarding the twins and when they arrived at Corey's home, when they left, for how long, when they came back, and I agree, I agree that Mr. Hall's testimony has some holes in it, some things that are inconsistent with what he tells the grand jury and what he tells the investigating detectives and what he tells the public in this courtroom.

Why those inconsistencies exist I'm not a hundred percent certain. . . . I guess [Hall] claims that it was Cab 81 or 91 and that he called it, presumably ran away from his initial plan to go to his aunt's house and ended up going to his grandmother's house by taxi presumably. That's his testimony although no one can confirm.

There was not evidence from anybody but Hall saying that's what he did. There was evidence discovered by the defense to suggest that that was another story, the cab company having no record of having any call approximately at that time and some question about the description of the cab and the driver and so on.

But notwithstanding those unanswered questions, shall we say, questionable pieces of his testimony, the basic scenario of gunfire from a car that was associated with [Petitioner], that, in fact, took the life of Jermaine Robertson and injured two other people by Mr. Davis, a reasonable inference based upon this evidence is that [Petitioner] participated in that event by hauling at least Mr. Davis and probably Howard Hall and maybe somebody else, may Jeron to the scene of the events.

* * *

> We do have [Petitioner] driving the vehicle from which the shots were fired.  We do have testimony saying that [Petitioner] pointed out Mr. Robertson to Davis.  We do have testimony that the direction was made by [Petitioner] to roll down the windows of the car.  We do have a disparity in age between [Petitioner] and Mr. Davis and Jeron Richards which would suggest that he was the person in control.
>
> So having shared all of those thoughts with you, having read the treatises and the cases that have been cited to me and reviewing my notes, I come to the conclusion that there is a combination of circumstantial evidence and eyewitness evidence that permits this Court to infer from the evidence that [Petitioner] was aiding and abetting Mr. Davis in the perpetration of this homicide.
>
> Now, is he aiding and abetting in a murder?  No.  He is aiding and abetting in a Manslaughter.

Resp. Exh. 107, pp. 334-340.

The trial judge acquitted Petitioner on the Assault charges. At sentencing, the judge imposed a Measure 11 sentence of 120 months of imprisonment.  Petitioner's attorney asked the court to give Petitioner credit for his pre-trial custody toward the Manslaughter sentence.  The court agreed, and entered judgment stating the sentence "is to run with credit for all time served." Resp. Exh. 1.

Petitioner directly appealed, alleging three assignments of error:  (1) there was insufficient evidence to prove petitioner intended to aid and abet manslaughter, and Oregon law does not

allow for the conviction of aiding and abetting a crime of recklessness; (2) the trial court erred in allowing one of Petitioner's alibi witnesses to take the Fifth Amendment; and (3) accomplice testimony must be corroborated under Oregon law. The Oregon Court of Appeals affirmed without opinion. *State v. Cabine*, 183 Or. App. 377, 52 P.3d 450 (2002).

Petitioner sought review from the Oregon Supreme Court. Petitioner argued one issue: that Oregon law does not allow a conviction for aiding and abetting a reckless act. The Oregon Supreme Court denied review. *State v. Cabine*, 335 Or. 90, 58 P.3d 821 (2002).

Petitioner then sought state post-conviction relief ("PCR"). In his formal PCR petition, he alleged 34 separate claims of ineffective assistance of trial and appellate counsel. Following an evidentiary hearing, the PCR trial judge denied relief.

On appeal, appointed counsel filed an appellate brief identifying one "question presented:" "Did the court below err when it dismissed the petition for post-conviction relief?" In support, PCR appellate counsel specifically argued Petitioner's trial attorney failed to sufficiently establish Howard Hall was an accomplice and failed to disqualify Officer Barrio's testimony. Counsel qualified his argument, however, stating "[i]n limiting his

appeal to this particular allegation, petitioner is not necessarily waiving forever and for all purposes the other allegations made in his petition." Resp. Exh. 136, p. 6.  Counsel also attached a copy of Petitioner's Second Amended Formal Petition for Post-Conviction Relief as an Excerpt of the record.

Petitioner sought and received permission from the Oregon Court of Appeals to file a Supplemental *Pro Se* Brief.  In it, Petitioner argued that his trial attorney improperly corroborated witness testimony and failed to adequately object to the criminal trial judge's finding that he could be convicted for aiding and abetting a reckless act.[1]  The Oregon Court of Appeals affirmed without opinion. *Cabine v. Hill*, 207 Or. App. 320, 141 P.3d 600 (2006).

Petitioner's PCR appellate counsel filed a Petition for Review with the Oregon Supreme Court.  The sole question presented in the Petition was whether the Court of Appeals erred in affirming the PCR trial judge's dismissal of Petitioner's PCR petition.  In support, the Petition referenced the arguments set out in his appellate brief and *pro se* supplemental brief.  The Oregon Supreme

_____

[1]

 Petitioner also challenged the PCR trial judge's finding of fact as to a confession allegedly made by Petitioner to his trial attorney, a claim which is not at issue here.

Court denied review.  *Cabine v. Hill*, 341 Or. 548, 145 P.3d 1109
(2006).

On December 28, 2006, Petitioner filed his habeas corpus
action in this Court.  The Court appointed counsel to represent
Petitioner, who filed Petitioner's Third Amended Petition Under 28
U.S.C. § 2254 for Writ of Habeas Corpus.  In it, Petitioner alleges
the following claims for relief:

> **Ground One:**  Petitioner was denied his Fourteenth
> Amendment right to due process and his Sixth Amendment
> trial rights when the trial court convicted petitioner of
> aiding and abetting Chris Davis' commission of
> Manslaughter in the First Degree, a reckless act.
> **Supporting Facts:**  There was insufficient evidence for
> the court to convict petitioner of aiding and abetting
> Chris Davis' commission of Manslaughter in [the] First
> Degree.  There was insufficient evidence that petitioner
> prepared, assisted, planned, advised, procured or
> encouraged the actions of Mr. Davis.  In addition the
> trial court failed to apply Oregon law which requires
> proof of an intent to aid and abet a criminal act.
> Therefore, it requires proof of prior knowledge of Chris
> Davis' intention to commit a criminal act.  Chris Davis'
> criminal act was not intentional rendering petitioner
> incapable of intending to assist Chris Davis.
>
> **Ground Two:**  Petitioner was denied his Sixth Amendment
> right of compulsory process and his Fourteenth Amendment
> right to due process when the court failed to compel the
> testimony of Luron Richards.
> **Supporting Facts:**  Petitioner sought Luron Richards
> testimony and asserted that he had information relevant
> to the state's witness' testimony, which included that
> Luron Richards was an eyewitness to the events leading up
> to the shooting.  The court denied petitioner's attempts
> to call this witness upon Luron Richard's counsel's

13 - OPINION AND ORDER -

unexplained and unsubstantiated claim of Fifth Amendment privilege.

**Ground Three:**    Petitioner was denied his Fourteenth Amendment right to due process when the trial court convicted petitioner despite insufficient evidence that accomplice Howard Hall's testimony implicating petitioner was corroborated.

**Supporting Facts:**   Howard Hall was an accomplice to the crime.   He admitted he was present in a vehicle from which the guns shots [sic] were fired.   He testified that Jeron Richards, petitioner and Chris Davis were also in the vehicle.   Jeron Richards, petitioner and Chris Davis were all charged with murder.   Howard Hall negotiated immunity from some charge for his testimony.   The state's case was dependent upon his testimony and his testimony was insufficiently corroborated to sustain a conviction.

**Ground Four:**  Petitioner was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel claimed the car depicted in the state's diagram was the car used in the crimes and failed to object to the court's findings about the car.

**Supporting Facts:** Before the judge, counsel claimed that the vehicle was used in the crime, and made admissions about petitioner's connection to the vehicle.   Whether this particular vehicle was used in the crime and whether petitioner had a connection to the vehicle were questions for the fact finder, the judge.    Trial counsel's admissions about the vehicle and client's connection prejudiced his right to fact finding based solely on the admissible evidence.   Trial counsel further failed to object to the court's findings on the basis that the Court was biased.

**Ground Five:** Petitioner was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel failed to effectively argue that petitioner could not be convicted for aiding and abetting a reckless criminal act and failed to object to the court's ruling and the bases for finding that petitioner could be

convicted for aiding and abetting a reckless criminal act.

**Supporting Facts:** Counsel was unprepared to argue with authority that, pursuant to applicable law, one cannot be guilty of aiding and abetting a reckless act. Counsel was unprepared and failed to challenge the authority the court cited when it ruled to the contrary.

**Ground Six:** Petitioner was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel failed to argue the evidence was insufficient to convict petitioner of aiding and abetting.

**Supporting Facts:** Counsel failed to seek an acquittal on the basis that the state failed to prove that petitioner intended to aid and abet Mr. Davis in the commission of Mr. Davis's crime of manslaughter. The record is insufficient to find petitioner prepared, assisted, planned, advised, procured or encouraged the actions of Mr. Davis.

**Ground Seven:** Petitioner was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel failed to object to the District Attorney's request that the public be excluded from trial while Howard Hall testified.

**Supporting Facts:** Mr. Hall was an accomplice to the crime and had negotiated immunity for his testimony. Counsel should have objected to the state's motion to exclude the public from observing his testimony to preserve his right to a public trial.

**Ground Eight:** Petitioner was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel failed to cross-examine the victim Charles Hamilton regarding prior inconsistent statements and failed to object to the state's use of Hamilton's perjured testimony.

**Supporting Facts:** Witness Charles Hamilton testified that the car used in the shooting was a brownish or

goldish colored car.  He further testified that it looked
like the automobile depicted in a photograph presented by
the State.   Trial counsel failed to fully cross examine
Charles Hamilton about his prior inconsistent statements
to the police, including, *inter alia*, that he did not
know if the shots came from someone on foot or in a car.
Trial counsel also failed to offer evidence of and cross-
examine Mr. Hamilton regarding inconsistent grand jury
testimony.

**Ground Nine:**  Petitioner was denied effective assistance
of trial counsel in violation of the Sixth and Fourteenth
Amendments of the United States Constitution because
trial counsel failed to cross examine the state's main
witness, Hall, about the consideration he received for
his testimony, including what criminal charges the state
agreed not to pursue against him.
**Supporting Facts:**  At trial, counsel only elicited the
fact that Mr. Hall's testimony had some relationship to
an agreement his counsel made with the district attorney.
The full measure of the consideration, and therefore, Mr.
Hall's bias, was not elicited or presented to the fact
finder.   Counsel's failure prevented an appropriate
assessment of Mr. Hall's credibility and prevented an
unquestionable assessment that Mr. Hall was an accomplice
to the crime to required [sic] corroboration of his
testimony.

**Ground Ten:**  Petitioner was denied effective assistance
of trial counsel in violation of the Sixth and Fourteenth
Amendments of the United States Constitution because
counsel failed to object to Officer Barrio's testimony.
**Supporting Facts:**  Counsel failed to object to Officer
Barrio's testimony.  The testimony was irrelevant because
it did not establish that petitioner had possessed or
drove a gold colored automobile on the date of the crime.

**Ground Eleven:**  Petitioner was denied effective
assistance of counsel in violation of the Sixth and
Fourteenth Amendments of the United States Constitution
because counsel failed to seek an acquittal and failed to
argue that the state did not prove Petitioner was guilty
beyond a reasonable doubt of all elements of the crime.

**Supporting Facts:** Trial counsel failed to seek an [sic] judgment of acquittal based upon the state's failure to prove all elements beyond a reasonable doubt. Counsel also failed to argue the inconsistencies of the state's evidence.

**Ground Twelve:** Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because counsel failed to assert and defend petitioner's right to compulsory process.

**Supporting Facts:** Counsel failed to argue settled case law and make a complete and accurate record and argument to compel the testimony of Luron Richards. Mr. Richards had personal knowledge of the whereabouts and conduct of petitioner during the offense conduct. Mr. Richard's testimony would have been inculpatory and there was an insufficient basis for his assertion of privilege. Counsel first failed when he, without sufficient basis, advised the court that Luron Richards should be appointed an attorney, implying that there was sufficient basis for Mr. Richards to assert a privilege. Counsel then failed to develop the record to establish that Mr. Richards did not have sufficient basis to assert a privilege and argue the appropriate legal standards to compel Mr. Richard's testimony.

**Ground Thirteen:** Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel failed to argue that his sentence should be imposed concurrent with a separate sentence.

**Supporting Facts:** Trial counsel failed to ask the court impose his sentence concurrent with a separate sentence to allow petitioner to receive, *inter alia*, pretrial detention credit.

**Ground Fourteen:** Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel failed to demure or otherwise object when the indictment stated that petitioner was the

principal actor who shot the victim but the state claimed and petitioner was convicted as an aider and abettor.[2]

**Ground Fifteen:** Petitioner was denied effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution because counsel failed to raise meritorious claims on appeal and failed to preserve petitioner's federal appellate issues for further review by the federal courts.
**Supporting Facts:** Appellate counsel failed to raise all meritorious trial court errors, whether preserved or plain. One of many specific errors appellate counsel failed to raise was that petitioner did not receive credit for time served as ordered by the sentencing judge. Counsel also failed to state, and assert all of petitioner's issues in the petition for review to the Oregon Supreme Court and to federalize them.

In his Memorandum in Support of Petition for Writ of Habeas Corpus, Petitioner does not directly address all of the claims alleged in the Third Amended Petition. Instead, he characterizes his challenge as based upon four errors in the bench trial and sentencing:

A structural error occurred when counsel failed to object to the court's total closure during the State's primary witness' testimony. The fact-finding process was distorted because counsel failed to obtain the testimony of two witnesses by compelling immunity due to the prosecution's selective grant of immunity to its primary accomplice witness. There was insufficient evidence for the manslaughter conviction for two reasons: 1) there was not proof that [Petitioner] aided and abetted the intentional crime charged and Oregon does not impose criminal liability for aiding and abetting a

---

[2]No "Supporting Facts" section was presented for Ground Fourteen.

reckless crime; and 2) the verdict was based upon speculation and insufficient corroboration of the accomplice's testimony to meet Oregon's evidentiary standard. Finally, the court agreed to [Petitioner's] request that he receive over 300 days of pre-trial custody credit but counsel failed to explain the process necessary for the court to accomplish that goal given the Department of Corrections limitations.

Respondent argues Petitioner procedurally defaulted several of the claims alleged in the Third Amended Petition, that he waived several claims by failing to address them in his Memorandum in Support, and that the state court decisions are entitled to deference on the remaining claims for relief.[3]

### DISCUSSION

**I.    Procedural Default**

   **A.   Legal Standards**

A state prisoner must exhaust all available state remedies either on direct appeal or through collateral proceedings (*e.g.*, state post-conviction relief) before a federal court may consider federal habeas corpus relief. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A prisoner satisfies the exhaustion requirement by "fairly presenting" his claims to the highest state court with jurisdiction to consider them, thereby

---

[3]Respondent initially argued that several of the claim alleged in the Third Amended Petition were barred by the statute of limitations, but subsequently withdrew that argument.

affording the state courts the opportunity to consider the allegations of legal error and correct any violations of its prisoner's federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

A prisoner fairly presents his claims by describing in the state court proceeding both the operative facts and the legal theory on which his claim is based. *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003). A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of law on which he relies, or a case analyzing the federal constitutional guarantee on which he relies, or to simply label his claim "federal." *Baldwin*, 541 U.S. at 32; *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). It is not enough that all the facts necessary to support the federal claim were available to the state courts, or that somewhat similar claims were made. *Anderson*, 459 U.S. at 6. In the Ninth Circuit, "a petitioner has not fairly presented his federal claim to a state court unless he 'specifically indicated to that court that those claims were based on federal law.'" *Pinell v. Belleque*, 638 F.Supp.2d 1231, 1241 (D. Or. 2009) (quoting *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended by* 247 F.3d 904 (9th Cir. 2001)).

Generally, when a state allows review of a constitutional violation either on direct appeal or by collateral attack, a prisoner need exhaust only one avenue before seeking habeas corpus relief. *Turner v. Compoy*, 827 F.2d 526, 529 (9th Cir. 1987). However, if a state "mandates a particular procedure to be used to the exclusion of other avenues of seeking relief" the correct avenue must be fully exhausted. *Id.*

"In Oregon, most trial errors must be raised by direct appeal to the Oregon Court of Appeals." *Kellotat v. Cupp*, 719 F.2d 1027, 1030 (9th Cir. 1983). However, violations of a defendant's rights which require a further evidentiary hearing for their determination, such as a claim of ineffective assistance of trial counsel, are appropriately determined upon post-conviction review. *Id.; see also State v. McKarge*, 78 Or.App. 667, 668, 717 P.2d 656 (1986) (claim of ineffective assistance of counsel may only be resolved in post-conviction proceeding); *Allbee v. Keeney*, 78 Or.App. 19, 21, 714 P.2d 1058, *rev. denied*, 301 Or. 78 (1986) (in order to warrant post-conviction relief, the error must be of constitutional dimension).

If a petitioner does not fairly present his federal claims in state court, and can no longer do so because they are procedurally barred under state law, the claims are procedurally defaulted in

federal court.  *O'Sullivan*, 526 U.S. at 848.  When a claim is procedurally defaulted, federal habeas review is barred "unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a miscarriage of justice."  *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993).

"'Cause' is a legitimate excuse for the default."  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991)  "Cause" exists only where there is a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

The fact that trial counsel failed to recognize the factual or legal basis of the claim does not excuse a default.  *Id*. at 486. Nor does an ineffective assistance of counsel claim constitute "cause" for the default if the ineffective-assistance claim was, itself, defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000).  Since no constitutional right to counsel exists on a collateral proceeding, the failure to provide effective assistance at such proceedings does not constitute "cause" sufficient to relieve a default.  *Coleman v. Thompson*, 501 U.S. 722, 772 (1991).

"'[P]rejudice' is actual harm resulting from the alleged constitutional violation." *Thomas*, 945 F.2d at 1123. "Prejudice" exists only if "actual and substantial disadvantage" resulting form the procedural default is shown. *U.S. v. Frady*, 456 U.S. 152 (1982). It is not enough to demonstrate the mere possibility of prejudice. Actual prejudice must be demonstrated. *Id*.

In the extraordinary case, cause for procedural default may be established by demonstrating a fundamental miscarriage of justice resulted in a "constitutional violation [that] probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *Noltie*, 9 F.3d at 806. The miscarriage of justice or actual innocence exception to procedural default is limited to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray*, 477 U.S. at 496).

**B.   Analysis**

   **1.   Trial Error Claims**

      On direct appeal from his conviction and sentence, Petitioner raised only one question in his Petition for Review to the Oregon Supreme Court: "Is it legally possible for a defendant to be found guilty of 'aiding and abetting' in the commission of a

reckless act?"  Resp. Exh. 111.  By way of argument in support, Petitioner stated "[t]he appellate court erred in affirming without opinion the trial court's denial of Appellant's direct appeal.  As noted in the trial record(s), there are no Oregon cases that directly address this specific question."  *Id*.

As such, Petitioner did not present two of his three trial error claims to the Oregon Supreme Court.  Moreover, with respect to the one trial error raised, Petitioner did not reference any federal source of law or case analyzing any federal constitutional guarantee.  Accordingly, the trial errors alleged in Grounds One, Two, and Three are all procedurally defaulted.

### 2.   Post-Conviction Claims

Petitioner argues he fairly presented all of the claims alleged in his PCR Petition to Oregon's highest court by assigning error to "the trial court's dismissal of his whole petition," by appending a copy of the PCR petition to counsel's brief, and by specifically stating in counsel's brief that Petitioner did not intend to waive any of the claims stated in the PCR petition. Petitioner is incorrect.

Under Oregon Rules of Appellate Procedure, a question or issue to be decided on appeal shall:  (1) be raised in the form of an assignment of error;  (2) identify precisely the legal,

procedural, factual, or other ruling that is being challenged; and

(3) demonstrate that the question or issue presented by the

assignment of error timely and properly was raised and preserved in

the lower court.  Or. R. App. P. 5.45(1), (3), & (4)(a).

        While not a model of appellate briefing, PCR counsel did

*argue* two claims of ineffective assistance of counsel:  (1) failure

to adequately show that Hall was an accomplice; and (2) failure

to object to Officer Barrio's testimony on the basis that his name did

not appear on the endorsement of the indictment.    In addition,

Petitioner's *pro se* supplemental brief argued two more grounds:

(1) trial counsel improperly corroborated witness testimony; and

(2) trial counsel should have better objected to the issue of

whether one can aid and abet a reckless act.    While these four

claims were not identified specifically as separate assignments of

error, they were, arguably, properly before the Oregon Court of

Appeals and, by reference to the appellate briefs in the Petition

for Review, the Oregon Supreme Court.

        The remaining claims alleged in the PCR petition but not

argued on appeal, were not fairly presented.    The Supreme Court has

clearly held that this approach is insufficient to fairly present

a claim on appeal.    *See Baldwin*, 541 U.S. at 32 ("ordinarily a

state prisoner does not 'fairly present' a claim to a state court

if that court must read beyond a petition or a brief (or a similar
document) that does not alert it to the presence of a federal claim
in order to find material ... that does so."); *see also Castillo v.
McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005) (in order to exhaust,
a petitioner must present his federal constitutional issue "within
the four corners of his appellate briefing"); *see also Jackson v.
Belleque*, 2010 WL 348357 *4 (D. Or. Jan. 21, 2010) (rejecting
argument that attaching PCR petition as part of Excerpt of Record
constituted fair presentation of claims alleged therein).

Petitioner's citation to the Oregon Supreme Court's recent
decision in *Farmer v. Baldwin*, 346 Or. 67, 205 P.2d 871 (2009) is
unavailing. *Farmer* was specifically limited to the situation where
appellate counsel filed a *Balfour* brief and, as the prisoner's
"Section B" portion of the brief, the prisoner attached a copy of
the PCR petition. *Farmer*, 346 Or. at 70.

Accordingly, Petitioner fairly presented only the four
claims identified above in his PCR appeal.  The remaining claims
alleged in his PCR petition and raised in his habeas corpus
petition before this Court are procedurally defaulted.

## 4.  Cause and Prejudice

Petitioner argues his PCR appellate attorney's failure to
fairly present all of his claims for relief on appeal constitutes

"cause" to excuse his procedural default of those claims. Petitioner's argument is without merit. *See Smith v. Baldwin*, 510 F.3d 1127, 1147-48 (9th Cir. 2007) (attorney ineffectiveness in the post-conviction process is not considered cause for the purposes of excusing the procedural default at that stage).

## II.  Relief on the Merits

### A.  Legal Standards

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [ the Supreme] Court and nevertheless arrives at

a result different from [Supreme Court] precedent." *Lockyer v.
Andrade*, 538 U.S. 63, 73 (2003).  A federal habeas court cannot
overturn a state decision "simply because that court concludes in
its independent judgment that the relevant state-court decision
applied clearly established federal law erroneously or
incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

The Supreme Court has established a two-part test to determine
whether a defendant has received ineffective assistance of counsel.
Under this test, a petitioner must prove that counsel's performance
fell below an objective standard of reasonableness, and that there
is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
*Strickland v. Washington*, 466 U.S. 668, 687-888 (1987).

To prove a deficient performance of counsel, a petitioner must
demonstrate that trial counsel "made errors that a reasonably
competent attorney as a diligent and conscientious advocate would
not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir.
1985).  The test is whether the assistance was reasonably effective
under the circumstances, and judicial scrutiny must be highly
deferential, with the court indulging a presumption that the
attorney's conduct falls within the wide range of reasonable
professional assistance.  *Strickland*, 466 U.S. at 689.

To establish the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" *United States v. Palomba*, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (*quoting Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

**B.  Analysis**

Petitioner has four ineffective assistance of counsel claims properly before this Court for habeas review: (1) trial counsel failed to adequately establish Howard Hall was an accomplice; (2) trial counsel failed to object to Officer Barrio's testimony on the basis that his name did not appear on the indictment; (3) trial counsel improperly corroborated witness testimony; and (4) trial counsel failed to adequately argue that Petitioner could not aid and abet a reckless act.

**1.  Howard Hall as Accomplice**

Petitioner alleges trial counsel should have elicited more evidence of the consideration the State provided Howard Hall

in exchange for his testimony.  According to Petitioner, counsel should have established Hall as an accomplice, which would in turn have required corroborating evidence.

Trial counsel did cross-examine Hall about what he was receiving in exchange for his testimony.  Petitioner presented no evidence that further inquiry would have established that Hall could be charged as an accomplice to the killing.  Moreover, the trial judge explicitly found corroborating evidence, independent of Hall's testimony, suggested Hall's testimony was credible. Accordingly, the PCR court correctly rejected this claim.  The PCR court's decision is entitled to deference, and Petitioner cannot obtain federal habeas relief on this issue.

### 2. Officer Barrio's Testimony

In the state PCR proceeding, Petitioner argued trial counsel should have objected to Officer Barrio's testimony because Petitioner was not given sufficient notice of the testimony. According to Petitioner, Officer Barrios testified before the grand jury, but his name did not appear in the indictment as required under Oregon law.  Petitioner did not, however, present any evidence in the PCR proceeding that Officer Barrios did testify before the grand jury.  In any event, trial counsel was aware the state intended to call Officer Barrios to testify and prepared for

that testimony.  Accordingly, the PCR court's decision that trial counsel did not provided constitutionally ineffective assistance of counsel is entitled to deference.

### 3.    Improper Corroboration of Witness Testimony

In his Third Amended Petition, Petitioner alleges trial counsel provided constitutionally ineffective assistance because he agreed the car depicted in the State's evidence was the car used in the crime and made admissions about Petitioner's connection to the vehicle.  As noted, this claim was exhausted in the state PCR proceeding.  Petitioner did not, however, provide argument on this claim in his briefs before this Court.

The Court rejects Respondent's assertion that Petitioner waived any grounds for relief not specifically addressed in his supporting Memorandum.  *See Blea v. Nooth*, 2009 WL 5194416 *8 (D. Or. Dec., 18, 2009).  However, having undertaken a review of this claim, the Court concludes habeas corpus relief is not warranted, because the PCR decision denying relief is entitled to deference.

### 4.    Argument on Aiding and Abetting a Reckless Act

Petitioner alleges trial counsel should have more effectively argued that Oregon law does not permit one to be convicted of the crime of aiding and abetting a crime committed with a reckless mental state.  In fact, trial counsel repeatedly

presented this state law argument  at trial and submitted a legal brief upon the trial judge's request at the close of trial.  The trial court considered the argument carefully, noting that he read several treatises as well as the parties' briefs on the issue.

Moreover, the trial judge concluded a person could be convicted of aiding and abetting a reckless act.  This state law finding was upheld on appeal, a decision not subject to review in federal court.  *See Mendez v. Small*, 298 F.3d 1158 (9th Cir. 2002) (state courts have the last word on the interpretation of state law).

No matter how effectively trial counsel did or did not argue the issue, the claim failed under state law.  Accordingly, the PCR court's decision denying relief on this issue is entitled to deference, and Petitioner is not entitled to habeas corpus relief in this Court.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** the Third Amended Petition for Writ of Habeas Corpus and **DISMISSES** this action.

IT IS FURTHER ORDERED that, should Petitioner appeal, the Court **DENIES** a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this <u>19th</u> day of March, 2010.

<u>     /s/ Anna J. Brown   </u>
ANNA J. BROWN
United States District Judge

33 - OPINION AND ORDER -